**Richard D. POMEROY, Appellant,**

v.

**Kristine RIZZO, as next friend of C.R., a minor, Appellee.**

**No. S–12520.**

Supreme Court of Alaska.

May 16, 2008.

---

Richard D. Pomeroy, pro se, Anchorage.

No appearance by Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

The mother of a child sued a person charged with sexual abuse of the child. The defendant counterclaimed on the ground that the mother's suit was "frivolous and fraudulent." Following the defendant's conviction for third degree assault of the child, the mother failed to prosecute her civil action against him. The superior court dismissed the mother's complaint because of this failure to prosecute. It also dismissed the defendant's counterclaim with prejudice because his conviction for assault precluded his counterclaim. Because we agree with the superior court that the conviction for assault precludes the person convicted from arguing that the mother's suit against him lacked merit, we affirm the decision of the superior court.

## II. FACTS AND PROCEEDINGS

### A. Facts

Richard Pomeroy met Kristine Rizzo in the summer of 2001. Between January 2002 and November 2002 Rizzo and her daughter, C.R.,[1] spent several nights at Pomeroy's house while Rizzo's boyfriend was incarcerated. During these visits, Pomeroy allegedly sexually assaulted C.R. repeatedly "by committing acts of sexual penetration upon her person."

The state investigated and charged Pomeroy with four counts of sexual assault of a minor. On November 12, 2002, the police arrested Pomeroy and he was incarcerated. Pomeroy remained in prison until September 2005. On September 13, 2005, Pomeroy pled no contest to assault in the third degree, a felony, for his involvement with C.R., and was sentenced to five years in prison with two suspended. Pomeroy was subsequently released and currently resides in Anchorage.

### B. Proceedings

In December 2002 Rizzo filed a civil suit as next best friend of C.R. seeking damages for "[p]ast, present and future physical and emotional pain and suffering" due to Pomeroy's negligence and intentional sexual assault of C.R. Rizzo amended her complaint in May 2003 to include a cause of action for negligent infliction of emotional distress. Rizzo sought $100,000 in punitive and compensatory damages.

Pomeroy counterclaimed. He asserted three causes of action against Rizzo and her attorney, J. Mitchell Joyner. Pomeroy claimed that he suffered damages due to the "frivolous and fraudulent lawsuit"; "wanton actions [that] constituted a fraud against [Pomeroy]"; and "wanton and reckless [conduct], which in turn constituted a[sic] infliction of past, present, and future emotional distress and financial hardship." Pomeroy sought $700,000 in punitive and compensatory damages.

From December 2002 to September 2005 Pomeroy actively litigated the civil suit while awaiting his criminal trial for the sexual assaults. The superior court granted Rizzo a continuance to stay the civil trial until the conclusion of Pomeroy's criminal case. Soon after pleading no contest to third-degree assault, Pomeroy petitioned the court to proceed to trial in the civil case alleging that he "resolved his criminal case and all sexual assault charges have been dismiss[ed]." Superior Court Judge Sharon L. Gleason granted Pomeroy's motion and issued a pre-trial order requiring the parties to discuss potential trial dates. In December 2005 Joyner, Rizzo's attorney, filed a motion to withdraw citing "lack of contact with the plaintiff and her refusal to participate in the prosecution of this case." Joyner later amended the certificate of counsel accompanying his motion to withdraw asserting that "difference of opinion" would prevent him from adequately representing Rizzo. Joyner withheld Rizzo's address from his certificate of counsel so that Pomeroy could not contact her directly. The superior court granted Joyner's motion to dismiss upon the condition that Pomeroy would serve all pleadings on Joyner until Rizzo obtained a post office box.

Following that ruling, Rizzo never registered a mailing address with the court and failed to respond to Pomeroy's motions. In September 2006 the superior court issued a notice of intent to dismiss. This notice required Rizzo to file an intent to proceed within thirty days. Less than a week later, Pomeroy filed a request for a default judgment. In November 2006 the superior court issued an order dismissing Rizzo's action and Pomeroy's counterclaim. The superior court held that Pomeroy's assault conviction precluded him from maintaining a counterclaim that Rizzo's action was a "frivolous lawsuit."

Pomeroy filed a motion for reconsideration asserting that his no contest plea was not binding against him in subsequent civil actions. The superior court denied the motion, relying upon our recent decision in *Lamb v. Anderson.*[2] Pomeroy now appeals the dis-

---

**1.** The initials C.R. were used by the superior court to protect the identity of the eight-year-old victim.

**2.** 147 P.3d 736 (Alaska 2006).

missal of his counterclaim on the basis that (1) his no contest plea cannot be used against him in a civil proceeding, (2) the court improperly treated assault and sexual assault as the same crime, (3) the court acted in a representative capacity by supplying points and authorities on behalf of Rizzo, (4) the dismissal denied him the right to confront witnesses against him, and (5) his constitutional rights to due process and trial by jury were violated.

## III. STANDARD OF REVIEW

██ We review a dismissal with prejudice under an abuse of discretion standard.[3] Under this standard, we will overturn a superior court decision only when "left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling."[4]

Pomeroy's assertions that the court erred in denying an unopposed motion and applying law outside the briefing of the parties are questions of law. We review these claims *de novo*.[5]

We review Pomeroy's constitutional claims that a dismissal of his counterclaim violates his rights under due process, the confrontation clause, and his right to a trial by jury using our independent judgment.[6]

## IV. DISCUSSION

Pomeroy represented himself throughout these proceedings (refusing the assistance of counsel from his insurance agency). In Alaska, pro se litigants are afforded greater leniency.[7] We hold Pomeroy's pleadings to less stringent standards than those of lawyers.[8] Accordingly, we must interpret Pom-

eroy's claims to discern the legal nature of his appeal.[9] Pomeroy's five issues on appeal substantively form the basis of three legal claims: (1) the superior court abused its discretion in dismissing his counterclaim on the merits, (2) the superior court improperly ruled on behalf of Rizzo by supplying her with points and authorities, and (3) the dismissal resulted in a violation of Pomeroy's constitutional rights.

### A. The Superior Court Did Not Abuse Its Discretion in Dismissing Pomeroy's Counterclaim with Prejudice.

██ Pomeroy first challenges the court's dismissal of his counterclaim. Pomeroy's counterclaim effectively raised a claim of abuse of process. Abuse of process is comprised of two elements: "(1) an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding."[10]

Although Pomeroy's generalized allegations may satisfy the ulterior purpose element of an abuse of process claim, he fails to present any evidence to satisfy the willful act element. We have held that the willful act "contemplates some overt act done in addition to the initiating of the suit. The mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action."[11] As we have noted in earlier cases, "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions."[12] Pomeroy only alleges that Rizzo is a fugitive and a criminal; he does not allege any act beyond the filing of this suit and therefore fails to plead an actionable

---

**3.** *De Salvo v. Bryant,* 42 P.3d 525, 527 (Alaska 2002).

**4.** *Peter Pan Seafoods, Inc. v. Stepanoff,* 650 P.2d 375, 378–79 (Alaska 1982).

**5.** *Forshee v. Forshee,* 145 P.3d 492, 497 (Alaska 2006).

**6.** *State, Dep't of Fish & Game v. Manning,* 161 P.3d 1215, 1219 (Alaska 2007).

**7.** *Casciola v. F.S. Air Serv., Inc.,* 120 P.3d 1059, 1062–63 (Alaska 2005).

**8.** *Id.*

**9.** *See id.* ("To avoid waiver, a *pro se* litigant's briefing must allow his or her opponent and this court to discern the *pro se's* legal argument.").

**10.** *Meidinger v. Koniag, Inc.,* 31 P.3d 77, 86 (Alaska 2001)

**11.** *Id.* (quoting *DeNardo v. Michalski,* 811 P.2d 315, 317 (Alaska 1991)).

**12.** *Kollodge v. State,* 757 P.2d 1024, 1026 (Alaska 1988).

claim of abuse of process. The superior court therefore did not abuse its discretion in dismissing the counterclaim.

Further, the superior court dismissed Pomeroy's counterclaim because his no contest plea foreclosed him from seeking legal recovery. Pomeroy contends that the superior court improperly relied on the holding in *Lamb v. Anderson,*[13] which the superior court interpreted as providing that his no contest plea to assault on the minor is legally binding in subsequent civil actions.[14] Pomeroy argues that the holding in *Lamb* should not apply to him because he was never informed of the legal implications of his plea.

Although the superior court correctly interpreted *Lamb* in dismissing Pomeroy's claims, *Burcina v. City of Ketchikan*[15] also governs Pomeroy's case. In *Lamb,* we held that a no contest plea is binding against a civil defendant;[16] in *Burcina,* we held that a no contest plea is binding against a civil plaintiff.[17] Although Pomeroy was the defendant in Rizzo's action against him, Pomeroy appealed to maintain his counterclaims against Rizzo. Thus, with respect to his abuse of process claims, Rizzo is in the position of a civil plaintiff and *Burcina* controls.

In that case, a mentally ill patient, Burcina, pled no contest to arson charges after setting the clinic at which he received psychiatric services on fire.[18] After pleading no contest, Burcina brought suit against the psychiatric clinic and his doctor for injuries he suffered in the blaze.[19] He alleged that negligent treatment caused him to set fire to the clinic.[20] In order to maintain that claim, Burcina had to show that he did not have the requisite criminal intent when he set fire to the clinic.[21] We held that the superior court properly granted summary judgment to the clinic and the doctor because Burcina could not relitigate the issue of his intent as he had already pled no contest to the crime.[22] We found that "a civil plaintiff is collaterally estopped from relitigating any element of a criminal charge to which he has pled *nolo contendere.*"[23] Under *Burcina,* Pomeroy is estopped from denying the elements of the assault charge to which he pled no contest. As Pomeroy cannot contest the elements of the assault charge, it follows that the mother of his victim had probable cause to believe that Pomeroy committed the acts alleged in her complaint.

Pomeroy argues that his plea should not estop him from pursuing his counterclaims because the judge did not inform him that his plea would have preclusive effect in later civil litigation, relying on language in *Lamb* But, as we recently noted in *Wilson v. Mac-Donald:*[24]

> [T]he question of whether a defendant is aware of all the relevant consequences of his or her plea is a question as to whether the plea itself is knowing or voluntary. Since this is a question as to the validity of the plea itself, it should be resolved through a motion for post-conviction relief or appeal in the criminal case.[25]

And in *Moore v. Peak Oilfield Service Co.,*[26] we noted that *Wilson* "dismissed the application of *Lamb* in a case where the criminal defendant pled no contest before *Lamb* clarified the civil implications of this plea."[27] We reiterated that the party seeking to avoid the civil consequences of "a no contest plea must do so 'through a motion for post-conviction

13. 147 P.3d 736 (Alaska 2006).

14. *Id.* at 741.

15. 902 P.2d 817 (Alaska 1995).

16. 147 P.3d at 742.

17. 902 P.2d at 821.

18. *Id.* at 819.

19. *Id.*

20. *Id.*

21. *Id.* at 821.

22. *Id.* at 822.

23. *Id.*

24. 168 P.3d 887 (Alaska 2007).

25. *Id.*

26. 175 P.3d 1278 (Alaska 2008).

27. *Id.* at 1279.

relief or appeal in the criminal case' "[28] In short, Pomeroy's plea estops him from pursuing his counterclaims because his plea has not been vacated on appeal or on a motion for post-conviction relief.

Finally, Pomeroy's argument that the superior court erred in holding his no contest plea to third degree assault against him in a civil action for sexual assault is unavailing. In order to substantiate her claim, Rizzo only needed to prove that she had probable cause that Pomeroy sexual assaulted her daughter in bringing her suit. When Rizzo initially brought her action in December 2002, Pomeroy was already incarcerated facing charges for the sexual assault of C.R. Just because Pomeroy later pled no contest in September 2003 to a lesser felony assault does not mean that Rizzo did not have probable cause for bringing a civil suit based on the greater charges when she brought suit in 2002. Moreover, Pomeroy's conviction for felony assault against Rizzo's daughter further supports a finding that Rizzo had probable cause to bring a civil suit against him.

## B. The Superior Court Did Not Err in Relying on Case Law Not Cited in Rizzo's Pleadings.

In addition to alleging that the court improperly dismissed his counterclaim, Pomeroy claims the superior court erred because Judge Gleason acted in a representative capacity on behalf of Rizzo by deciding the case pursuant to case law she found from her own research after Rizzo had failed to respond to the court's notice of intent to dismiss or to Pomeroy's motion for a default judgment. Pomeroy's claim lacks merit.

Pomeroy relies on *State v. Johnson*[29] for the proposition that "it is . . . not the duty of the trial court to supply points and authori-

ties for either side."[30] Pomeroy fails to include the sentence immediately following: "neither may a court accept one party's assertions as to the present state of the law simply because the opposing party fails to adequately respond to those assertions."[31] In *Johnson*, we reversed a dismissal of an indictment.[32] We held that a dismissal for want of information and ineffective briefing were overly harsh remedies.[33] A sanction or a request for further briefing would have been a more appropriate remedy.[34] Pomeroy misreads *Johnson* as restricting a trial court from using case law outside the pleadings of the parties. *Johnson's* narrow holding is that a trial court may not dismiss an indictment for insufficient legal pleadings when less harsh remedies are available to the court.[35] Furthermore, *Johnson* referenced Alaska Civil Rule 77, which holds only that the moving party, here Pomeroy, is responsible for providing points and authorities.[36] Under Rule 77, Rizzo had no obligation to provide points and authorities, and the court did not err in refusing to accept Pomeroy's analysis of case law. Finally, there is no language in *Johnson* that implies that the court is prohibited from relying upon case law outside the pleadings.[37]

Putting aside Pomeroy's misinterpretation of *Johnson*, his argument in essence raises two claims: (1) the court may not deny an unopposed motion, and (2) the court may not independently research the law in deciding pending motions.

Pomeroy contends that the court erred in failing to grant his motion for default judgment because Rizzo did not file any pleadings in opposition to Pomeroy's motion nor file an intent to proceed. Pomeroy's argument hinges on the idea that judges are forbidden from denying an unopposed mo-

**28.** *Id.* (quoting *Wilson*, 168 P.3d at 889).

**29.** 525 P.2d 532 (Alaska 1974).

**30.** *Id.* at 535 n. 4.

**31.** *Id.*

**32.** *Id.* at 536.

**33.** *Id.*

**34.** *Id.*

**35.** *Id.*

**36.** *Id.* at 535 n. 4; Alaska R. Civ. P. 77(b)(2) (requiring the moving party to provide "a brief, complete written statement of the reasons in support of the motion, which shall include a memorandum of the points and authorities").

**37.** *See generally Johnson*, 525 P.2d 532.

tion. But we have consistently found that "[t]he fact that a motion is uncontested does not mean that it must be granted as a matter of right." [38] Accordingly, the superior court did not err in denying Pomeroy's unopposed motion simply because Rizzo did not file pleadings with the court. Rather, the court properly researched the issue and correctly decided it.

█ Pomeroy further alleges impropriety in the court's citation to *Lamb v. Anderson*[39] and *Wyatt v. Wyatt.*[40] Because Rizzo did not file an intent to proceed or an opposition to Pomeroy's motion for default judgment, these cases were independently located by the trial court. The court relied on *Wyatt* in dismissing Pomeroy's claim, although Rizzo never cited *Wyatt* in pleadings, motions, memoranda, or briefs. Pomeroy argues generally that the superior court's decision violated the common law. But the Alaska legislature has vested the superior court "with all power and authority necessary to carry into complete execution all its judgments, decrees, and determinations in all matters within its jurisdiction according to the constitution, the laws of the state, and the common law." [41] The superior court is statutorily bound to consider common law, in addition to constitutional and statutory law, in formulating its decisions.[42] Restricting a court to considering only those cases mentioned in the parties' briefs would violate this requirement. Furthermore, there is no common law or statute that prohibits courts from applying case law outside the parties' briefs. The court, therefore, did not err in relying on the Alaska case law it located through its own research.[43]

## V. CONCLUSION

Because Pomeroy failed to make out a prima facie claim for abuse of process, be-

cause Pomeroy's no contest plea to assault precluded his counterclaim against Rizzo, and because a trial court is not bound to grant an unopposed motion but may independently consult the sources of Alaska law, we AFFIRM the dismissal of Pomeroy's counterclaim with prejudice.

---

**38.** *Gallagher v. Gallagher,* 866 P.2d 123, 124 (Alaska 1994) (citing *Willie v. State,* 829 P.2d 310, 312 (Alaska App.1992); *Bauman v. State, Div. of Family & Youth Servs.,* 768 P.2d 1097, 1099 (Alaska 1989); *Weaver Bros., Inc. v. Chappel,* 684 P.2d 123, 126 (Alaska 1984); *Greater Anchorage Area Borough v. Real Prop. Taxpayer's Ass'n,* 513 P.2d 1103, 1104 (Alaska 1973)).

**39.** 147 P.3d 736 (Alaska 2006).

**40.** 65 P.3d 825 (Alaska 2003).

**41.** AS 22.10.050.

**42.** *Id.*

**43.** We have reviewed Pomeroy's claims that his constitutional rights were violated. Most are inadequately briefed; all of them lack merit.