Charles E. BURNETT, Appellant,

v.

Kenneth COVELL, Appellee.

No. S–12517.

Supreme Court of Alaska.

Aug. 29, 2008.

Kenneth P. Jacobus, Kenneth P. Jacobus, P.C., Anchorage, for Appellant.

Paul W. Waggoner, Esq., Law Offices of Paul Waggoner, Anchorage, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

A visitor to a law office was injured when a chair in the office collapsed under him. He sued the owner of the law office to recover damages under two theories of liability: ordinary negligence and strict products liability. The superior court resolved both issues on summary judgment in favor of the office owner, and dismissed the suit with prejudice. Because the injured party failed to establish sufficient grounds under which a fact-finder could conclude that the office owner did not act reasonably in maintaining his office, and because we decline to extend strict products liability to include the owners of office furniture, we affirm the decision of the superior court.

## II. FACTS AND PROCEEDINGS

### A. Facts

Charles Burnett visited the Fairbanks law offices of Kenneth Covell in May 2002 to participate in a meeting with Covell and one of Covell's clients. When Burnett, who weighed approximately 330 pounds, attempted to sit in one of the chairs in Covell's office, the chair collapsed under him. The chair was wood-framed with naugahyde-covered cushioning. Covell had owned the chair since he bought the practice, including the office and furniture, in 2000. The chair had previously belonged to the attorney from whom Covell purchased the practice. It appears that the chair had been in the office, and used by clients and others, since at least 1986. Burnett himself had previously visited the office and used the office furniture. Burnett seeks to recover damages and costs including medical expenses, lost income, pain and suffering, loss of enjoyment of life, and other damages.

### B. Proceedings

Burnett filed his complaint against Covell in May 2004, alleging that Covell's negligence led to the chair's collapse and Burnett's injuries. Covell moved for summary judgment on the negligence claim in November 2005, arguing that there was no evidence that he had actual or constructive knowledge of any defect in the chair, and that therefore there was insufficient evidence to sustain a negligence claim against him. Burnett responded with his own motion for partial summary judgment in January 2006. Burnett asserted that Covell was liable as a matter of law under a products liability theory, and that therefore summary judgment against Covell was appropriate. Burnett also argued that Covell breached the duty of ordinary care that he owed to all visitors to his office.

In June 2006 the superior court issued its memorandum decision, granting Covell's motion for summary judgment and denying Burnett's motion. The superior court concluded that Covell could not be found strictly liable under a products liability theory because products liability applies only to the manufacturer, seller, or distributor of the defective product, and Covell was merely the owner of the product. The superior court also held that Covell did not breach his duty of ordinary care because there was no evidence that he was aware of the dangerous condition of the chair at the time of the collapse, or of any environmental factors that may have precipitated the collapse. The superior court entered its final judgment on November 16, 2006, dismissing the case with prejudice.

## III. STANDARD OF REVIEW

 We review a grant of summary judgment *de novo*, and will affirm if the record contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[1] We draw all reasonable inferences of fact from the proffered evidence against the moving party and in favor of the non-moving party.[2] When the superior court's summary judgment decision involves a pure question of law, we adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[3]

## IV. DISCUSSION

### A. The Superior Court Did Not Err in Denying Burnett's Motion for Partial Summary Judgment on the Issue of Products Liability.

 Burnett argues that the doctrine of strict products liability should be extended to apply to a business owner who provides furniture for the use of a visitor or client. To support this argument, Burnett asserts that "[a]ll that is necessary for a strict liability recovery for a defective product is that the product have a defect, and that the defect causes an injury to a human being." This assertion misstates the law by omitting the fact that products liability applies only to "sellers, manufacturers, wholesale or retail

---

1. *Wilson v. MacDonald,* 168 P.3d 887, 888 (Alaska 2007).

2. *Id.* at 888–89.

3. *State Farm Mut. Auto. Ins. Co. v. Lestenkof,* 155 P.3d 313, 316 (Alaska 2007).

dealers and distributors."[4] Therefore, in addition to proving that a product has a defect and that the defect causes an injury to a human being,[5] a plaintiff seeking a strict products liability recovery must also prove that the defendant is a member of one of the groups subject to products liability.[6] Burnett does not claim that Covell should be categorized as a seller, manufacturer, dealer, or distributor. Instead, Burnett urges us to "extend[ ] the doctrine and principles of strict liability to one who furnishes defective personal property to an office visitor or client."

■ We have extended the scope of strict products liability in the past,[7] but have refused to extend strict products liability beyond those who place a product into the stream of commerce.[8] A purchaser and owner of office furniture who makes this furniture available to clients and guests has not placed this furniture into the stream of commerce. Instead, an office owner has received the item in the stream of commerce but has not moved it along.

The one case identified by Burnett as supportive of his argument with facts similar to those in the instant case is distinguishable because liability in that case was based on a statute that does not have a counterpart in Alaska. In *Ferguson v. State Farm Fire and Casualty Co.,*[9] the Louisiana Court of Appeals affirmed a products liability decision against an employer whose employee was injured when the office chair she was sitting in collapsed.[10] The Louisiana court found the employer liable under a Louisiana statute that allocates liability to individuals for harm caused by items in their possession or ownership.[11] Alaska has no comparable statute, nor have Alaska courts imposed a similar rule in allocating liability.

Burnett additionally relies on the factors articulated in *D.S.W. v. Fairbanks North Star Borough School District*[12] to bolster his argument that the public interest in maintaining safety in the workplace would be promoted by imposing strict products liability on office owners, but Burnett's reliance on these factors is misplaced.

The *D.S.W.* factors are typically applied retroactively to the specific facts of a case to determine whether the defendant owed a duty of care to the plaintiff.[13] Burnett does

---

**4.** *Saddler v. Alaska Marine Lines, Inc.,* 856 P.2d 784, 787 (Alaska 1993) (citing Restatement (Second) of Torts § 402A cmt. f (1965)) (refusing to apply strict products liability to common carrier who did not sell, manufacture, deal, or distribute allegedly defective products).

**5.** *See Butaud v. Suburban Marine & Sporting Goods, Inc.,* 543 P.2d 209, 214 (Alaska 1975).

**6.** *See Saddler,* 856 P.2d at 787 (citing Restatement (Second) of Torts § 402A cmt. f (1965)).

**7.** *See Bachner v. Pearson,* 479 P.2d 319, 325–27 n. 14 (Alaska 1970) (holding that strict products liability extends to leases, and noting history of expansion of strict tort liability to include retailers, manufacturers of component parts, and mass builder of homes, and to allow recovery by injured bystanders).

**8.** *See Pepsi Cola Bottling Co. of Anchorage v. Superior Burner Serv. Co.,* 427 P.2d 833, 839 & n. 21 (Alaska 1967) (recognizing strict products liability but declining to impose strict liability upon those who have agreed to furnish labor or services).

**9.** 398 So.2d 72 (La.App.1981).

**10.** *Id.* at 73. Burnett lists several additional cases from other jurisdictions that involve the application of strict liability in tort to chairs, but Burnett does not offer any analysis and these cases are all distinguishable on the basis of either the facts or the law applied.

**11.** *Id.* at 74 (quoting La. Civ.Code Ann. art. 2317: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.").

**12.** 628 P.2d 554 (Alaska 1981). In *D.S.W.* we identified several factors to be considered when determining the existence of an actionable duty of care: the foreseeability of harm to the plaintiff; the degree of certainty that the plaintiff suffered injury; the closeness of the connection between the defendant's conduct and the injury suffered; the moral blame attached to the defendant's conduct; the policy of preventing future harm; the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach; and the availability, cost and prevalence of insurance for the risk involved. *Id.* at 555.

**13.** *See City of Kotzebue v. McLean,* 702 P.2d 1309, 1315 (Alaska 1985) (applying *D.S.W.* factors to conclude that "under the particular facts

not argue that we should use the *D.S.W.* factors to find that Covell owed an actionable duty to Burnett. Instead, Burnett argues that we should rely on the *D.S.W.* factors as the basis for extending strict products liability. But the *D.S.W.* factors are not relevant to an inquiry into the policy rationale for extending the scope of strict products liability. Strict liability, which does not depend on actual negligence or intent to harm,[14] precludes the very factual determinations and balancing of considerations that are so essential under the *D.S.W.* analysis. In addition, the *D.S.W.* factors rely on considerations that are not applicable under strict products liability. We have held that "[t]he focus in a strict product liability case is on the product, not on the conduct of the defendant,"[15] but two of the *D.S.W.* factors specifically consider the defendant's conduct.[16]

Burnett does not identify which of the *D.S.W.* factors he finds most supportive of his argument that we should extend the doctrine of products liability to owners who provide furniture to their clients or other guests. Instead, Burnett points to the ease with which office owners can protect their clients from defective furniture, and the relative difficulty for the clients to secure the same protections. Burnett also points to the habit of people to replace other possessions, such as cars and computers, every three to five years. Finally, Burnett highlights the potential for collapsing chairs to cause serious injury, and the availability of insurance to insulate office owners against this risk. Although all of these arguments support the recognition of a duty of care owed by office owners to their clients and other guests, none of them suggests a need for a strict products liability approach.

■ Furthermore, the owners of offices and other commercial spaces in Alaska already owe a duty of care to their clients and other guests. In Alaska, "landowners have

a duty to use due care to guard against unreasonable risks created by dangerous conditions existing on their property."[17] This approach strikes the proper balance of recognizing a duty but requiring specific factual findings to establish a breach of this duty. Plaintiffs must show that dangerous conditions existed on the property and that the property owner did not use due care to guard against unreasonable risks posed by these dangerous conditions.

Burnett has failed to identify policy considerations sufficient to justify extension of strict products liability to office owners who provide furniture to clients and other guests. Therefore, the superior court did not err in denying Burnett's motion for partial summary judgment on the issue of strict products liability.

## B. The Superior Court Did Not Err in Granting Covell's Motion for Partial Summary Judgment on the Issue of Negligence.

■ The superior court granted Covell's motion for partial summary judgment on Burnett's negligence claim, determining that a business owner must have either actual or constructive knowledge of the dangerous condition of a chair in order to be held liable for injuries caused by it, and finding that Burnett had not offered any evidence that Covell was aware of the dangerous condition of the chair at the time it collapsed, or was aware of any other factors that would have made the chair susceptible to collapse. Burnett argues that although Covell may not have had actual knowledge of the chair's dangerous condition, there remained a triable question of fact whether Covell breached his duty of care by not replacing the chair because he should have been aware that the chair's age and the environment in which it was kept would have made it susceptible to collapse.

of this case" city owed "an actionable duty of care" to victim stabbed by perpetrator who had warned police of his intent to stab victim).

14. See BLACK'S LAW DICTIONARY 934 (8th ed.2004).

15. *Keogh v. W.R. Grasle, Inc.,* 816 P.2d 1343, 1352 (Alaska 1991).

16. 628 P.2d at 555.

17. *Guerrero v. Alaska Hous. Fin. Corp.,* 6 P.3d 250, 255–56 (Alaska 2000) (quoting *Schumacher v. City & Borough of Yakutat,* 946 P.2d 1255, 1258 (Alaska 1997)).

As stated above, office owners in Alaska already have a duty of due care to guard against unreasonable risks created by dangerous conditions existing on their property.[18] The duty of due care is the duty to act with that amount of care which a reasonably prudent person would use under the same or similar circumstances.[19] Alaska case law is silent on the standards to be applied in the case of a chair collapse. The superior court relied on the decisions of courts of other jurisdictions, which required that a business owner have either actual or constructive knowledge of the dangerous condition of a chair in order to be held liable for injuries sustained from the collapse of that chair.[20] We do not adopt this approach. Instead, we look to the "ordinary principles of negligence" governing the conduct of a landowner. These principles, which we first articulated in *Webb v. City and Borough of Sitka*,[21] require that a "landowner or other owner of property must act as a reasonable person in maintaining his property in a reasonably safe condition in view of the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden on the respective parties of avoiding the risk."[22]

Under Alaska Rule of Civil Procedure 56(b) and (c), a party against whom a claim is asserted may move for summary judgment, showing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. When a party seeking summary judgment argues that there are no genuine issues of material fact in dispute, the adverse party must produce admissible evidence that reasonably demonstrates that a triable issue of fact exists.[23] The adverse party may not rest upon mere allegations, but must set forth specific facts showing that there is a genuine issue of material fact.[24] A genuine issue of material fact exists where reasonable jurors could disagree on the resolution of a factual issue.[25] In order to establish that there is a genuine issue of material fact the adverse party must offer more than a scintilla of contrary evidence.[26]

Covell argued, in his memorandum in support of his motion for summary judgment, that Burnett failed to establish the existence of any evidence that would show that the chair had a defect or that Covell could have discovered any defect through the use of reasonable care. Covell supported these assertions with an affidavit where he stated that "[n]either one of the chairs had any apparent defects at the time of the accident" and "[b]oth my clients and I have sat in these same chairs countless times, and I had never had any indication that either chair was unsound prior to the day of the accident."

Burnett conceded, in his memorandum in opposition to Covell's motion for summary judgment, that he did not believe that Covell had actual knowledge of any defect in the chair. At the oral argument on the motions

---

18. *Id.*

19. *Leigh v. Lundquist*, 540 P.2d 492, 494 (Alaska 1975); *see also Winschel v. Brown*, 171 P.3d 142, 147 n. 13 (Alaska 2007) (noting that party that created hazard owed "a duty of due care that required him to take reasonable steps to protect others from being harmed by the hazard").

20. *See, e.g., Benham v. King*, 700 N.W.2d 314, 318 (Iowa 2005) ("[l]iability is not imposed in the absence of such actual or constructive knowledge of a dangerous condition because this knowledge is essential to establish a breach of the duty"); *Gremmels v. Tandy Corp.*, 120 F.3d 103, 105 (8th Cir.1997) (a "business owner is not subject to liability on a claim of negligence if the owner and its agents did not know, or could not have known, by exercise of reasonable care, of the condition that caused the harm"); *see also George v. Ponderosa Steak House*, 221 A.D.2d 710, 632 N.Y.S.2d 893, 894 (N.Y.1995); *Rose v.*

*McMahon*, 10 Mich.App. 104, 158 N.W.2d 791, 793 (1968).

21. 561 P.2d 731 (Alaska 1977) (superseded in part by AS 09.65.200).

22. *Id.* at 733.

23. *See McKean v. Hammond*, 445 P.2d 679, 684 (Alaska 1968); *see also Isler v. Jensen*, 382 P.2d 901, 902 (Alaska 1963).

24. *Martech Constr. Co. v. Ogden Envtl. Servs., Inc.*, 852 P.2d 1146, 1149 n. 7 (Alaska 1993) (citing Rule 56(e)).

25. *McGee Steel Co. v. State for Use & Benefit of McDonald Indus. Alaska, Inc.*, 723 P.2d 611, 614 (Alaska 1986).

26. *Martech*, 852 P.2d at 1149 n. 7.

for summary judgment the superior court asked Burnett's counsel to identify any evidence in the record that could provide a factual basis for the allegation that Covell breached his duty. Burnett's counsel was unable to identify evidence showing that Covell had either actual or constructive knowledge of a defect. Instead, Burnett argued below—and he renews these arguments in his brief on appeal—that it is a question for the jury whether Covell breached his duty of due care when he failed to replace a wood framed chair, with glued joints, that was at least fifteen years old and that had spent those years subject to continuous use in a dry environment that may have hastened its deterioration.

■■■■ We have held that issues of negligence are not ordinarily susceptible to summary judgment and should be resolved by trial.[27] Nevertheless, the party opposing the motion must set forth facts showing that the party could produce admissible evidence that reasonably would demonstrate to the court that a triable issue of fact exists.[28] The superior court, in granting summary judgment to Covell on the issue of negligence, found that "Burnett has presented no evidence that Covell knew of any environmental factors that made the chair susceptible to collapse or that the chair may have been weakened by age." Although the presence of actual or constructive notice may be considered in determining negligence, such notice is not by itself an element of a prima facie claim of negligence.[29] In this case, however, Burnett fails to establish any evidence of actual or constructive notice, and his remaining arguments are so strained that no reasonable person could rely on them as support for a finding of negligence. Burnett therefore failed to meet his burden of establishing that he could produce admissible evidence showing that there was a genuine issue of material fact. Burnett does not allege that he could produce any evidence of any signs of physical deterioration present in the chair—or in any other furniture in the office of a similar vintage—prior to the chair's collapse. Nor has Burnett alleged that he could produce any evidence establishing a common practice among office owners of replacing furniture once it reaches a certain age. In the absence of such concrete evidence, Burnett's unsupported assertion that the environmental conditions within a Fairbanks office mandate the regular replacement of furniture on a schedule of less than fifteen years is not sufficient to show that there was a genuine issue of material fact as to whether Covell acted negligently. Because Burnett has not shown that he can produce any evidence that could cause reasonable jurors to disagree as to whether Covell breached his duty of due care, the superior court did not err in granting Covell's motion for summary judgment.

## V. CONCLUSION

■■■ Because strict liability does not extend to a business owner who provides furniture for use by a visitor or client, and because there is no material fact in dispute suggesting evidence sufficient to establish that Covell acted negligently in maintaining his property, we AFFIRM the superior court's order dismissing this case with prejudice.

MATTHEWS, Justice, not participating.

---

27. *Webb,* 561 P.2d at 735.

28. *See Isler,* 382 P.2d at 902.

29. *See Edenshaw v. Safeway, Inc.,* 186 P.3d 568, 570 (Alaska 2008) (holding that actual or constructive notice is not element of prima facie case in slip-and-fall action).